**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OAKLEY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-5963 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Oakley, Inc. ("Oakley") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Oakley's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit Oakley products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Oakley substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Oakley to combat online counterfeiters who trade upon Oakley's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products featuring Oakley's trademarks (the "Counterfeit Oakley Products"). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine Oakley products, while actually selling Counterfeit Oakley Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their massive counterfeiting operation. Oakley is forced to file these actions to combat Defendants' counterfeiting of its registered

trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Oakley Products over the Internet. Oakley has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.     Plaintiff Oakley, Inc. is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

5.     Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A., a publicly traded company.

6.     Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products"). Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design. Among the purchasing public, genuine Oakley Products are instantly recognizable as such. In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley Products are among the most recognizable eyewear, headwear, footwear, outerwear, jackets and apparel in the world.

7.     Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official

oakley.com website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.

8.  Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products.  As a result of its long-standing use, Oakley owns common law trademark rights in its OAKLEY Trademarks.  Oakley has also registered its trademarks with the United States Patent and Trademark Office.  Oakley Products typically include at least one of Oakley's registered trademarks.  Often several Oakley marks are displayed on a single Oakley Product. Oakley has registered its trademarks with the United States Patent and Trademark Office. Oakley uses its trademarks in connection with the marketing of its Oakley Products, including the following marks which are collectively referred to as the "OAKLEY Trademarks."

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 1,519,823 | OAKLEY | 18 Athletic bags. | January 10, 1989 | OAKLEY |
| 1,521,599 | OAKLEY | 9 Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces. | January 24, 1989 | OAKLEY |
| 1,522,692 | OAKLEY | 25 Clothing, namely, shirts and hats. | January 31, 1989 | OAKLEY |
| 1,552,583 | OAKLEY | 9 Goggles. | August 22, 1989 | OAKLEY |
| 2,293,046 | OAKLEY | 25  Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all purpose sports footwear and socks. | November 16, 1999 | OAKLEY |
| 2,409,789 | OAKLEY | 14 Jewelry and time pieces, namely, watches. | December 5, 2000 | OAKLEY |

4

| 3,153,943 | OAKLEY | 9 Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and reviewing text, data and audio files on portable digital electronic devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules. | October 10, 2006 | OAKLEY |
|---|---|---|---|---|

| 3,771,517 | OAKLEY | 35  Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage. | April 6, 2010 | OAKLEY |
| 1,908,414 | OAKLEY stylized | 16 Printed material, namely decals and stickers. | August 1, 1995 | OAKLEY |
| 1,980,039 | OAKLEY stylized | 9, 25  Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories clothing, headwear and footwear, namely T-shirts, sweatshirts, blouses, sweaters, sport shirts, jerseys, shorts, trousers, pants, sweatpants, ski pants, racing pants, jeans, coats, vests, jackets, swimwear, hats, visors, caps, gloves, belts, socks, sandals and shoes. | June 11, 1996 | OAKLEY |

| 1,356,297 | OAKLEY stylized | 9, 25 Goggles, sunglasses, protective pads for elbows, feet and knees. Clothing - namely t-shirts; gloves; racing pants; hats; sweatshirts; sport shirts, jackets, jeans, jerseys and ski pants, jackets, hats, gloves and socks. | August 27, 1985 | |
|---|---|---|---|---|
| 1,519,596 | OAKLEY stylized | 9 Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces. | January 10, 1989 | |
| 3,143,623 | OAKLEY stylized | 9, 25 Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swim trunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots. | September 12, 2006 | |
| 1,902,660 | OAKLEY and design | 16 Printed material, namely decals and stickers. | July 4, 1995 | |

| | | | | |
|---|---|---|---|---|
| 1,990,262 | OAKLEY and design | 9, 25 Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories clothing, headwear and footwear, namely T-shirts, sweatshirts, blouses, sweaters, sport shirts, jerseys, sweatpants, ski pants, racing pants, jeans, coats, vests, jackets, hats, visors, caps | July 30, 1996 | |
| 3,496,633 | O | 25 clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely, wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots. | September 2, 2008 | |
| 2,301,660 | O | 14 Jewelry and time pieces, namely, watches | December 21, 1999 | |

| 3,331,124 | O | 9, 25 Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories; and protective clothing, namely, racing pants; Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots | November 6, 2007 | |
| --- | --- | --- | --- | --- |
| 3,151,994 | O | 9 Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories | October 03, 2006 | |

| | | | | |
|---|---|---|---|---|
| 3,771,516 | O | 35 Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage | April 6, 2010 | |
| 3,785,868 | O | 9 Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories | May 4, 2010 | |
| 2,300,245 | O | 25 clothing, namely, T-shirts, beachwear, blouses, sports shirts, jerseys, shorts, shirts, pants, racing pants, ski pants, vests, jackets, sweaters, pullovers, coats, sweatpants, sweatshirts, headwear, namely, hats, caps, and footwear, namely, shoes, athletic footwear, all purpose sports footwear | December 14, 1999 | |
| 2,207,455 | O | 18 luggage, duffle bags, athletic bags, luggage bags with rollers, wrist mounted carryall bags, tote bags, all purpose sports bags, knapsacks and backpacks | December 1, 1998 | |

| | | | | |
|---|---|---|---|---|
| 2,209,416 | O | 9, 25 Protective and/or anti-glare eyewear, namely, goggles, and their parts and accessories, namely, cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories; clothing, headwear and footwear, namely, T-shirts, hats, shorts, shirts, pants, jackets, sweatshirts, shoes, and pullovers | | |
| 1,927,106 | O | 16 printed material, namely decals and stickers | October 17, 1995 | |
| 1,984,501 | O | 9, 25 protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories; clothing and headwear, namely T-shirts, sweatshirts, jackets, hats, and caps | July 2, 1996 | |
| 1,904,181 | O | 9 protective and/or anti-glare eyewear, namely sunglasses, goggles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips, cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories | July 11, 1995 | |

| 3,693,071 | O | 18 Traveling bags and backpacks | October 6, 2009 | |
|---|---|---|---|---|

9.     The above registrations for the OAKLEY Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The OAKLEY Trademarks have been used exclusively and continuously by Oakley, some since at least as early as 1975, and have never been abandoned.  Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the OAKLEY Trademarks included in the above table.  The registrations for the OAKLEY Trademarks constitute *prima facie* evidence of their validity and of Oakley's exclusive right to use the OAKLEY Trademarks pursuant to 15 U.S.C. § 1057(b).

10.     The OAKLEY Trademarks are exclusive to Oakley, and are displayed extensively on Oakley Products and in Oakley's marketing and promotional materials.  Oakley Products have long been among the most popular eyewear in the world and have been extensively promoted and advertised at great expense.  In fact, Oakley has expended millions of dollars annually in advertising, promoting and marketing featuring the OAKLEY Trademarks.  Oakley Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items.  Because of these and other factors, the Oakley name and the OAKLEY Trademarks have become famous throughout the United States.

11.     The OAKLEY Trademarks are distinctive when applied to the Oakley Products, signifying to the purchaser that the products come from Oakley and are manufactured to Oakley's quality standards.  Whether Oakley manufactures the products itself or licenses others

12

to do so, Oakley has ensured that products bearing its trademarks are manufactured to the highest quality standards. The OAKLEY Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the OAKLEY Trademarks is of incalculable and inestimable value to Oakley.

12.     Since at least as early as 1995, Oakley has operated a website where it promotes and sells genuine Oakley Products at oakley.com. Sales of Oakley Products via the oakley.com website represent a significant portion of Oakley's business. The oakley.com website features proprietary content, images and designs exclusive to Oakley.

13.     Oakley's innovative marketing and product designs have enabled Oakley to achieve widespread recognition and fame and have made the OAKLEY Trademarks some of the most well-known marks in the eyewear and apparel industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Oakley brand have made the OAKLEY Trademarks valuable assets of Oakley.

14.     Oakley has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the OAKLEY Trademarks. As a result, products bearing the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Oakley is a multi-million dollar operation, and Oakley Products have become among the most popular of their kind in the world.

**The Defendants**

15.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this

Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Oakley Products to consumers within the United States, including the State of Illinois.

16.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the OAKLEY Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Oakley to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Oakley will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of the Oakley brand has resulted in its significant counterfeiting. Consequently, Oakley has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Oakley has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Oakley Products to consumers in this Judicial District and throughout the United States. Despite Oakley's enforcement efforts online and on the ground, Defendants have

persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Oakley Products. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

18. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Oakley Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the OAKLEY Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Oakley has not licensed or authorized Defendants to use any of the OAKLEY Trademarks, and none of the Defendants are authorized retailers of genuine Oakley Products.

19. Defendants also deceive unknowing consumers by using the OAKLEY Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to

consumer searches for Oakley Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Oakley Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Oakley also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Oakley Products.

20.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Oakley Products for sale in the

Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Oakley Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Oakley's official oakley.com website.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

23.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Oakley's enforcement efforts. On information and belief,

Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

24.     Defendants, without any authorization or license from Oakley, have knowingly and willfully used and continue to use the OAKLEY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Oakley Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has sold Counterfeit Oakley Products into the United States, including Illinois.

25.     Defendants' use of the OAKLEY Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Oakley Products, including the sale of Counterfeit Oakley Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Oakley.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

26.     Oakley re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

27.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered OAKLEY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The OAKLEY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Oakley Products sold or marketed under the OAKLEY Trademarks.

28.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the OAKLEY Trademarks without Oakley's permission.

29.     Oakley is the exclusive owner of the OAKLEY Trademarks. Oakley's United States Registrations for the OAKLEY Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Oakley's rights in the OAKLEY Trademarks, and are willfully infringing and intentionally using counterfeits of the OAKLEY Trademarks. Defendants' willful, intentional and unauthorized use of the OAKLEY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Oakley Products among the general public.

30.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31.     Oakley has no adequate remedy at law, and if Defendants' actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of its well-known OAKLEY Trademarks.

32.     The injuries and damages sustained by Oakley have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Oakley Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

33.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Oakley Products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with Oakley or the origin, sponsorship, or approval of Defendants' Counterfeit Oakley Products by Oakley.

35.     By using the OAKLEY Trademarks on the Counterfeit Oakley Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Oakley Products.

36.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Oakley Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37.     Oakley has no adequate remedy at law and, if Defendants' actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of its Oakley brand.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE OAKLEY TRADEMARKS**

38.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39.     Oakley is the exclusive owner of the OAKLEY Trademarks.  The U.S. Registrations for the OAKLEY Trademarks (Exhibit 1) are in full force and effect.  Additionally, the OAKLEY Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

40.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating the OAKLEY Trademarks have acted with bad faith intent to profit from the unauthorized use of the OAKLEY Trademarks and the goodwill associated therewith by

registering, trafficking in, or using various domain names which are identical to, confusingly similar to or dilutive of the OAKLEY Trademarks.

41.     Defendants have no intellectual property rights in or to the OAKLEY Trademarks.

42.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

43.     Oakley has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the OAKLEY Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Oakley.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq.*)**

44.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 43.

45.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Oakley Products as those of Oakley, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Oakley Products, representing that their products have Oakley's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

46.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

47.    Oakley has no adequate remedy at law, and Defendants' conduct has caused Oakley to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Oakley will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Oakley prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  a. using the OAKLEY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Oakley Product or is not authorized by Oakley to be sold in connection with the OAKLEY Trademarks;

  b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Oakley Product or any other product produced by Oakley, that is not Oakley's or not produced under the authorization, control, or supervision of Oakley and approved by Oakley for sale under the OAKLEY Trademarks;

  c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Oakley Products are those sold under the authorization, control or supervision of Oakley, or are sponsored by, approved by, or otherwise connected with Oakley;

  d. further infringing the OAKLEY Trademarks and damaging Oakley's goodwill;

  e. otherwise competing unfairly with Oakley in any manner;

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear any Oakley trademark, including the OAKLEY Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Oakley Products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine Oakley Product or not authorized by Oakley to be sold in connection with the OAKLEY Trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Oakley a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, at Oakley's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Oakley, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc.,

Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Oakley's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Oakley's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Oakley's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Oakley Products using the OAKLEY Trademarks, including any accounts associated with the Defendants listed on Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Oakley Products using the OAKLEY Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5) That Defendants account for and pay to Oakley all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the OAKLEY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Oakley be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the OAKLEY Trademarks and $100,000 per domain name incorporating the OAKLEY Trademarks pursuant to 15 U.S.C. § 1117(d);

7) That Oakley be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.


Dated this 7th day of July 2015.                    Respectfully submitted,


                                                    /s/ Justin R. Gaudio_____
                                                    Kevin W. Guynn
                                                    Amy C. Ziegler
                                                    Justin R. Gaudio
                                                    Jessica L. Bloodgood
                                                    Greer, Burns & Crain, Ltd.
                                                    300 South Wacker Drive, Suite 2500
                                                    Chicago, Illinois 60606
                                                    312.360.0080
                                                    312.360.9315 (facsimile)
                                                    kguynn@gbclaw.net
                                                    aziegler@gbclaw.net
                                                    jgaudio@gbclaw.net
                                                    jbloodgood@gbclaw.net

                                                    *Counsel for Plaintiff Oakley, Inc.*